IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| NANCY A. SCHMITT-DOSS,<br>           *Plaintiff,*<br><br>    v.<br><br>AMERICAN REGENT, INC., LUITPOLD PHARMACEUTICALS, INC., AND DAIICHI SANKYO CO., LTD. OF JAPAN,<br>           *Defendants.* | CASE NO. 6:12-cv-00040<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

   This matter is before the Court on the Defendants' joint motion to dismiss for insufficient service of process. Defendant Daiichi Sankyo Co., Ltd. of Japan filed an additional motion to dismiss Plaintiff's claims for lack of personal jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A hearing on Defendants' motions took place on November 29, 2012, in Lynchburg. For the following reasons, I deny Defendants' joint motion to dismiss for insufficient service of process, but grant Daiichi Sankyo Co., Ltd. of Japan's motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

           **I.  STATEMENT OF FACTS**

   This products liability matter arises from Plaintiff Nancy A. Schmitt-Doss's ("Plaintiff") allegation that she was given a pharmaceutical drug injection containing cyanide and aluminum. Beginning in February 2009 and continuing through July 2009, Plaintiff states that she received injections of a vitamin B-12 solution by the staff of Dr. Thomas E. Dobyns, of Madison Heights,

1

VA.[1]  According to Plaintiff's complaint, filed on July 18, 2011, in Amherst County Circuit Court, the drug was manufactured and distributed to medical professionals by the Defendants American Regent, Inc., Luitpold Pharmaceuticals, Inc., and Daiichi Sankyo Co., Ltd. of Japan ("Defendants").  In her complaint, Plaintiff alleges that "Defendants willfully, intentionally and negligently allowed the Vitamin B-12 Injection solution to be distributed and dispensed to the Plaintiff containing foreign matter."  Specifically, Plaintiff alleges that the injections she received contained "cyanocobalamin, which is a molecule of cyanide and poison," as well as aluminum.  Plaintiff does not disclose how or when she discovered what ingredients those injections contained, or how her injections may have differed from other vitamin B-12 injections on the market.[2]  As a result of these injections, Plaintiff states that she "bec[a]me quite debilitated and ill, suffered extreme pain and mental anguish, and severe nerve damages [sic] and continues suffering on a daily basis . . . ."  Plaintiff has requested a jury trial, and she seeks $10 million in damages.

Defendants received the summons and complaint for this action from the Secretary of the Commonwealth on July 23, 2012.  None of the Defendants are incorporated or reside in Virginia, and Defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446 on August 7, 2012.[3]  The case was transferred from Amherst County Circuit Court to the Western District on August 8, 2012.

---

[1] Dr. Heights is not a party to this case.

[2] In fact, there is evidence that when vitamin B-12 is prescribed in the medical field, that particular vitamin supplement is referred to as "cyanocobalamin."  *See Eli Lilly and Co. v. Tevan Parental Medicines, Inc., et al.*, 2012 WL 2358102, at * 11 (S.D. Ind. June 20, 2012) ("The Court accepts [plaintiff's] expert's . . . representation that a person of ordinary skill in the art would understand 'vitamin B12' to mean cyanocobalamin.").

[3] Plaintiff lists her address as Madison Heights, VA.  Defendants American Regent, Inc. and Luitpold Pharmaceuticals, Inc. are New York corporations with their principal place of business in Shirley, NY, while Daiichi Sankyo Co., Ltd. of Japan is a Japanese company with its principal place of business in Tokyo.

Defendants now move to dismiss this action, based on the fact that more than a year passed between the date Plaintiff filed her complaint in state court, and the date on which Defendants were served with the summons and complaint by the Secretary of the Commonwealth of Virginia. Daiichi Sankyo Co., Ltd. of Japan ("Daiichi Japan") independently moves to dismiss this action on the grounds that this Court lacks personal jurisdiction over it, and that Plaintiff has failed to state a claim upon which relief can be granted.

## II.  LEGAL STANDARDS

### A. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure provides for the dismissal of an action when the court lacks personal jurisdiction over a defendant. Given that no evidentiary hearing regarding jurisdiction has taken place, at this stage, "the burden on plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When the court addresses the question of personal jurisdiction on the basis of motion papers, legal memoranda, allegations in the complaint, and jurisdictional discovery, the facts are viewed in the light most favorable to the plaintiff. *Id.*; *Mitrano v. Hawes,* 377 F.3d 402, 406 (4th Cir. 2004).

In order for this Court to properly exercise personal jurisdiction over the non-resident Defendants, a two-step inquiry that considers the strictures of the Constitution and the relevant state statute is required. *See Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 277 (4th Cir. 2009). The relevant portion of Virginia's long-arm statute provides, "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . causing tortuous injury by an action or omission in [the]

3

Commonwealth." Va. Code Ann. § 8.01-328.1(A)(3). For this case, "[b]ecause Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (citation and internal quotation marks omitted). The appropriate question, then, is whether the Defendants have sufficient "minimum contacts with [this forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation marks omitted).

When a non-resident defendant's contacts with the forum state form the basis for the suit, they may establish "specific jurisdiction" in the forum state. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 397 (4th Cir. 2003).[4] In determining whether specific jurisdiction exists, the court considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Id.* (citations omitted).

### B. Failure to State a Claim

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is

---

[4] To establish "general jurisdiction" over a non-resident corporation, the plaintiff must show that the corporation's activities in the state are "continuous and systematic," which is a more demanding standard than is necessary for establishing "specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir. 2002).

4

"more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In particular, a pro se complaint must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation omitted).

### III. DISCUSSION

#### A. Service of Process

Under Rule 3:5(e) of the Rules of the Supreme Court of Virginia, "No order, judgment or decree shall be entered against a defendant who was served with process more than one year after the institution of the action against that defendant unless the court finds as a fact that the plaintiff exercised due diligence to have timely service on that defendant." Similarly, Virginia Code § 8.01-275.1 provides, "Service of process on a defendant more than twelve months after the suit or action was commenced shall be timely upon a finding by the court that the plaintiff exercised due diligence to have timely service made on the defendant." A dismissal for failure to serve process within one year is dismissal with prejudice. *See Gilbreath v. Brewster*, 250 Va. 436, 463 S.E. 2d 836 (1995).

Service of process or notice on the Secretary is deemed effective on the date the certificate of compliance is filed with the court in which the action is pending. Va. Code Ann. § 8.01-329(C). The Certificate of Compliance in this case contains a stamp showing it was filed in Amherst County Circuit Court on July 24, 2012. Plaintiff's initial complaint, however, was filed more than a year earlier in that court, on July 18, 2011. Thus, whether or not Plaintiff's

5

complaint is dismissed for untimely service will depend on whether Plaintiff exercised due diligence in her attempt to timely serve Defendants. The Supreme Court of Virginia defines diligence as a "devoted and painstaking application to accomplish an undertaking." *Londeree v. Crutchfield Corp.*, 68 F. Supp. 2d 718, 723 (W.D. Va. 1999) (quoting *Dennis v. Jones*, 240 Va. 12, 393 S.E.2d 390, 393 (1990)).[5] Cases where untimely service could potentially be excused under this narrow standard include where there was some obstruction to service, such as the lack of an address or an evasive defendant. *See id.* (citing *T & S Rentals v. United States*, 164 F.R.D. 422, 425 (N.D. W.Va. 1996)).

Defendants argue that there was no obstruction in this case, and for that reason this Court should find that Plaintiff did not exercise the requisite due diligence to excuse her untimely service. Defendants contend that Plaintiff could have requested service at any time through the Secretary of the Commonwealth, using either the address she listed for the Defendants in her complaint, or the addresses listed on the websites for the Defendant companies. In her opposition, Plaintiff states that she "telephon[ed] Defendants' place of business on more than one occasion requesting the name and address of the Registered Agent and was informed by the agent that she had no idea what the Plaintiff was asking for." Plaintiff also states that when she called the offices of American Regent, Inc., she was "advised that American Regent Inc. was not required to have a Registered Agent to do business in the Commonwealth of Virginia." Plaintiff summarized these efforts again for the Court during the November 29, 2012 motion hearing.[6]

---

[5] This "due diligence" standard in Virginia is narrower than the "good cause" standard under the Federal Rules of Civil Procedure, where a court may take into account outside events occurring in one's life. *Londeree*, 68 F. Supp. 2d at 723.

[6] Defendants dispute Plaintiff's assertion that she telephoned the Defendants' place of business on more than one occasion. Defendants note that Plaintiff does not offer any dates on which these calls allegedly took place, or identify the name of any person with whom she spoke. Defendants have submitted declarations from two receptionists at American Regent/Luitpold, neither of whom have any recollection of Plaintiff calling.

Plaintiff also states that she delivered, by express mail, her affidavit and accompanying paperwork to the Secretary of the Commonwealth for service of process on July 12, 2012.[7] However, her documents were returned to her on the basis that, according to Plaintiff, "more copies were needed for the service as intended and requested." Plaintiff then mailed her papers, with additional copies, back to the Secretary of the Commonwealth on July 16, 2012. The Secretary of the Commonwealth received that mailing on July 18th, and forwarded Plaintiff's papers to the Defendants on July 19, 2012. Defendants state that they received the summons and complaint for this case on July 23rd, and the Certificate of Compliance was filed on July 24, 2012, nearly a week past the service deadline.[8]

Defendants have not contested Plaintiff's statement or her supporting evidence that she delivered her papers to the Secretary of the Commonwealth on July 12, 2012, six days before the service of process deadline. Nor do Defendants challenge Plaintiff's representation to the Court that she consulted with an Amherst County Circuit Court clerk for help in compiling the requisite documents for that initial submission to the Secretary's office—a mailing that was returned to her, according to Plaintiff, for lack of copies. Instead, Defendants argue that Plaintiff's decision to wait until the final week to complete service of process is, by itself, an indication of her lack of due diligence. In support, Defendants cite *Bowman v. Concepcion*, 283 Va. 552, 722 S.E.2d 260 (2012), in which the Virginia Supreme Court found that a plaintiff failed to exercise due diligence in seeking to obtain service of process on a defendant where plaintiff readily could have obtained service at almost any time during the year following the filing of her complaint.

---

[7] Plaintiff sent her documents by express mail on July 11, 2012, and confirmed receipt by the Secretary's office the following day.

[8] As stated, "[s]ervice of process or notice on the Secretary shall be effective on the date the certificate of compliance is filed with the court in which the action is pending." Va. Code Ann. § 8.01-329(C). Plaintiff's complaint was filed on July 18, 2011, in Amherst County Circuit Court.

7

However, *Bowman*, which considered a medical malpractice action, can be distinguished from the matter at hand. In the malpractice context, while a plaintiff must obtain an expert opinion for the purposes of serving a defendant, pursuant to Virginia Code § 8.01-20.1, he or she "is nonetheless required to obtain service of process on the defendant within twelve months of filing the action as required by Code § 8.01-275.1, even if the plaintiff has not yet obtained the expert opinion." *Bowman*, 283 Va. at 562. The aforementioned plaintiff in *Bowman* relied solely on her unsuccessful efforts to obtain the expert opinion required by § 8.01-20.1 as the basis for asserting that she exercised due diligence in her attempt to timely serve the defendant. She did not dispute the fact that she could have otherwise readily obtained service of process on the defendant, pursuant to § 8.01-275.1, but made absolutely no effort to do so. *See id.* The Virginia Supreme Court found that plaintiff's effort to obtain the § 8.01-20.1 expert opinion did not constitute part of the due diligence required to excuse late service under § 8.01-275.1, and held that "[plaintiff] had not shown that she exercised due diligence in seeking to obtain service of process upon [defendant] within twelve months of the filing of her complaint." *Id.* at 564. Conversely, Plaintiff in this case has presented for the Court her efforts to obtain timely service of process, which include, most significantly, sending her affidavit and paperwork to the Secretary of the Commonwealth by express mail on July 11, 2012, after consulting with and obtaining a signature from a clerk in the Amherst County Circuit Court.

Defendants also cite the Western District's ruling in *Londeree v. Crutchfield Corp., et al.*, 68 F. Supp. 2d 718 (W.D. Va. 1999), which can be distinguished as well. In that case, the plaintiff's failure to timely serve in-state defendants was not excused after she filed her Serving Notice with the clerk only two days before the Rule 3:3 deadline (now under Rule 3:5) was set to

expire. *Londeree*, 68 F. Supp. 2d at 722.[9] The Court held that the plaintiff did not exercise due diligence given that there were no obstructions to service, and as a plaintiff proceeding *in forma pauperis*, she was afforded all of the routine methods of service of process by the court (but failed to take advantage of those services until two days before the deadline). *Id.* at 723.[10] Plaintiff in this case, who is not proceeding *in forma pauperis*, filed her paperwork with the Secretary's office for the purpose of serving out-of-state Defendants six days before the Rule 3:5 deadline, only to have it returned to her for need of additional copies.

Setting aside Plaintiff's alleged phone calls to Defendants' place of business, I find that waiting until early in the final week of the Rule 3:5 deadline before attempting to serve Defendants through a statutory agent is not, by itself, evidence of a lack of due diligence on the part of Plaintiff. Likewise, under Virginia law, even if Defendants would have never received Plaintiff's papers, that alone would not have vitiated service of process. *See Banks v. Leon,* 975 F. Supp. 815, 819 (W.D. Va. 1997). Rather, if a Plaintiff meets the statutory requirements of § 8.01-329, "service is complete and conclusive." *Basile v. Am. Filter Serv., Inc.,* 231 Va. 34, 37, 340 S.E. 2d 800, 802 (Va. 1986). Thus, the crucial inquiry instead, for the facts at hand, is whether Plaintiff complied with the requirements of § 8.01-329—particularly with regard to her initial, June 11, 2012 mailing to the Secretary—to determine whether the subsequent late service on Defendants can be excused, and Plaintiff's case need not be dismissed with prejudice.[11]

---

[9] Because the defendants in *Londeree* were in-state, plaintiff in that case did not need to fulfill the Code requirements for service of process under Virginia's long arm statute. *See* Va. Code Ann. § 8.01-329(C).

[10] Moreover, the individual defendants in that case worked with plaintiff at her former workplace, and plaintiff could have readily requested service of process at that location. *See Londeree*, 68 F. Supp. 2d at 723.

[11] The Court hasn't seen or heard specific evidence regarding exactly how many copies of each document Plaintiff initially provided for the Secretary of the Commonwealth, or exactly what the Secretary's office requested for resubmission.

Subsection C of Code § 8.01-329 sets out a plaintiff's requirements for service of process or notice on the Secretary of the Commonwealth, who is then responsible for forwarding plaintiff's documents, return receipt requested, to the defendants meant to be served. Subsection C does not specifically state exactly how many copies of each document Plaintiff is required to mail to the Secretary of the Commonwealth; instead, the statute only states as follows: "Service of such process or notice on the Secretary shall be made by the plaintiff's . . . leaving a copy of the process or notice, together with a copy of the affidavit called for in subsection B hereof and the fee . . . in the office of the Secretary in the City of Richmond, Virginia." Va. Code Ann. § 8.01-329(C). Subsection B of the statute, referenced above, sets forth the required contents for an affidavit, but again says nothing in regards to the number of copies a plaintiff seeking to service on three named defendants (as in this case) must submit.[12]

As Defendants' counsel mentioned during the November 29, 2012 hearing, the website for the Secretary of the Commonwealth's service of process department also sets forth instructions for a plaintiff seeking service on out-of-state defendants. The website lists "2 Affidavits (one original and one copy)," as well as "1 copy of papers being served," under the relevant paperwork requirements for a plaintiff seeking service of process through the Secretary's office.[13] Regarding these instructions, Plaintiff stated the following, during the November 29, 2012 hearing:

> [Service] certainly didn't appear to be a problem to the circuit court . . . in the view of the fact that the clerk of the circuit court did certify the affidavit on July the 11th to be sent to the Secretary of the Commonwealth and gave me all of the copies and . . . saw fit to give

---

[12] Va Code § 8.01-329(B) states as follows: "When service is to be made on the Secretary, the party or his agent or attorney seeking service shall file an affidavit with the court, stating either (i) that the person to be served is a nonresident or (ii) that, after exercising due diligence, the party seeking service has been unable to locate the person to be served."

[13] VA SECRETARY OF THE COMMONWEALTH: SERVICE OF PROCESS, http://www.commonwealth.virginia.gov/judicialsystem/service/service.cfm (last visited Dec. 6, 2012).

10

> me the documents to take directly to the post office because he probably wouldn't get them there that day . . . . So I took them to the post office myself.

Transcript of Record at 24, lines 4-14 (docket no. 18).

This Court has not seen any specific evidence that Plaintiff failed to follow the Secretary's online instructions, or more significantly, the statutory requirements listed in § 8.01-329(B) and (C), when she first consulted with the Amherst County Circuit Court clerk and then delivered her paperwork to the Secretary's office, by express mail, on July 12, 2012.

The Fourth Circuit has also held that a plaintiff who complied with the statutory provisions of § 8.01-329(C) but whose service of process was returned as "undeliverable" had still timely completed her service requirements in regards to the putative defendant. *See Equipment Finance Group, Inc. v. Traverse Computer Brokers*, 973 F.2d 345, 347 (4th Cir. 1992) (citing *Steed v. Commonwealth*, 11 Va. App. 175, 397 S.E. 2d 281, 284 (1990)). Again, Defendants have not presented any evidence that Plaintiff failed to comply with her portion of the statutory requirements of § 8.01-329(C) when she delivered her papers to the Secretary of the Commonwealth six days before the service of process deadline. *See, e.g., Basile*, 231 Va. at 37, 340 S.E. 2d at 800 (Service on corporate defendant was complete and conclusive, where statutory requirements for service *on the secretary* were met, even though corporate defendant had no actual notice of litigation.) (emphasis added). Specifically, Plaintiff's consultation on July 11, 2012, with the Amherst County Circuit Court clerk, who signed her affidavit, and her express mailing later that afternoon, is an indication of her due diligence. At bottom, the two cases that Defendants rely on in their memorandum in support of their motion to dismiss—*Bowman* and *Londeree*—are distinguishable on their facts. I find that Plaintiff exercised due diligence in attempting to timely execute service of process, and therefore Defendants' joint motion to dismiss must be denied.

11

## B. Personal Jurisdiction

Daiichi Japan independently moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(2) for lack of personal jurisdiction. At this point, it is Plaintiff's burden to make a prima facie showing of a sufficient jurisdictional basis in order to survive the challenge. *See Combs*, 886 F.2d at 676. Plaintiff alleges, without foundation or support, that Daiichi Japan is "doing business in the Commonwealth of Virginia." However, Daiichi Japan states that it has no contacts with the Commonwealth of Virginia, does not sell any products in Virginia, has never shipped any products into Virginia, does not advertise in Virginia, and has no offices, agents, employees, representatives, distributors or sales persons in Virginia. Nor does Daiichi Japan manufacture, sell, or import into the United States the vitamin B-12 injection product that Plaintiff references in her complaint. Plaintiff has not presented any evidence to challenge these assertions.

Daiichi Japan's individual contacts with Virginia are not sufficient to show that it "transact[s] business" in Virginia, under § 8.01-328.1(A)(1). However, Daiichi Japan is the parent corporation of co-defendant Luitpold Pharmaceutical Inc.'s ("Luitpold") parent corporation, Daiichi U.S., which has not been named as a party in this case.[14] For a court to exercise personal jurisdiction over a parent corporation, a plaintiff must show (1) that the subsidiary's activities in Virginia are sufficient to confer jurisdiction pursuant to section 8.01–328.1,[15] and (2) that the relationship between the parent and its subsidiary is such that the subsidiary's actions can be imputed to the parent. *Omega Homes, Inc. v. Citicorp Acceptance*

---

[14] Luitpold is the parent corporation for the other named defendant, American Regent, Inc.

[15] For the purposes of this products liability case, Va. Code Ann. § 8.01-328.1(A)(3) states that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . causing tortuous injury by an action or omission in [the] Commonwealth."

12

*Co.,* 656 F. Supp. 393, 399 (W.D. Va. 1987) (citation omitted). A plaintiff can fulfill the second requirement by showing either that the parent uses the subsidiary as its alter ego, *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.,* 576 F. Supp. 312 (D. Md. 1983), or that the subsidiary is the implied agent of the parent. *Kolbe, Inc. v. Chromodern Chair Co., Inc.,* 211 Va. 736, 180 S.E.2d 664, 667 (1971). *See also Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005) ("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity.").

Defendants acknowledge that Luitpold does business in the Commonwealth. However, Daiichi Japan argues that sales by the subsidiary of Daiichi U.S. (in this case, Luitpold) are not sufficient to subject Daiichi Japan to specific personal jurisdiction in Virginia. Daiichi Japan states that it maintains no control over where the vitamin B-12 injection is distributed or sold by Luitpold, and that it had no knowledge that Luitpold was selling products manufactured by Luitpold in Virginia. *See generally Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993) (noting various factors, such as significant degree of control, that may rebut the general rule that contacts of a corporate subsidiary cannot impute jurisdiction to its parent). Plaintiff has not challenged any of Daiichi Japan's assertions, in either her filings or during the November 29th hearing. Plaintiff has failed to demonstrate the requisite alter ego or implied agency relationship between the two entities, and Plaintiff's claims asserted against Daiichi Japan must be dismissed.

### C. Failure to State a Claim

Plaintiff's Complaint against Daiichi Japan is also subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. Under *Twombly* and *Iqbal,* a complaint will survive a motion to dismiss only if it contains, in addition to legal

13

conclusions, factual allegations sufficient to "permit the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Iqbal,* 550 U.S. at 679. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to survive a motion to dismiss. *Id.* at 678.

In her complaint, Plaintiff states that "Defendants had a duty to exercise due care in the manufacture and distribution of the said Vitamin B-12 Injection solution and . . . [n]otwithstanding said duty, Defendants willfully, intentionally and negligently allowed the Vitamin B-12 Injection solution to be distributed and dispensed to the Plaintiff containing foreign matter, i.e. cyanocobalamin (cyanide) and aluminum (toxins)." Plaintiff goes on to state that as "a direct and proximate cause and result of Defendants' willful and intentional negligence, Plaintiff . . . bec[a]me quite ill, suffered extreme pain and mental anguish, and severe nerve damages [sic] . . . ."

Again, Plaintiff's complaint does not mention how Daiichi Japan relates to either the product she was given or the other named defendants in this case. As discussed, Daiichi Japan asserts that "[t]he Cyanocobalamin Injection that Plaintiff alleges caused her injury in the Commonwealth of Virginia would have been shipped there by Luitpold, and not Daiichi Japan." Daiichi Japan had no specific knowledge that Luitpold was selling products manufactured by Luitpold to any doctors, pharmacies, or any other businesses or individuals in Virginia. It is the role of this Court to determine whether a "plausible claim for relief" has been made. *Iqbal,* 556 U.S. at 662. At this time, Plaintiff has not alleged how Daiichi Japan was negligent in this matter, or refuted Daiichi Japan's assertions that it maintains no control over the products that Luitpold sells. Thus, Plaintiff's claims against Daiichi Japan must be dismissed on this ground as well.

14

## IV.  CONCLUSION

For the foregoing reasons, Defendants' joint motion to dismiss for insufficient service of process shall be denied.  However, Daiichi Japan's motion to dismiss Plaintiff's claims against it shall be granted.  An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to Plaintiff and all counsel of record.


Entered this __13th__ day of December, 2012.


_____
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE