**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| NANCY A. SCHMITT-DOSS, | CASE NO. 6:12-cv-00040 |
| *Plaintiff,* | |
| | **MEMORANDUM OPINION** |
| v. | |
| AMERICAN REGENT, INC. & LUITPOLD PHARMACEUTICALS, INC., | JUDGE NORMAN K. MOON |
| *Defendants.* | |

This case is before the Court on a Motion for Summary Judgment and a Motion to Exclude Plaintiff's Experts, filed by American Regent, Inc. ("Regent") and Luitpold Pharmaceuticals, Inc. ("Luitpold") (collectively, "Defendants"), on June 23, 2014. Nancy A. Schmitt-Doss ("Plaintiff") filed her complaint *pro se* in this personal injury action in the Circuit Court of Amherst County on July 18, 2011. Plaintiff claims that Defendants failed to exercise due care in manufacturing and distributing vitamin B-12 injections she took, because those injections allegedly contained "foreign substances identified as cyanocobalamin which is a molecule of cyanide and poison to all people and creatures and . . . aluminum which is an ingredient in the Vitamin B-12 injection and is toxic to human beings." Compl. ¶ 3 (in State Court Record at 20, docket no. 8). Plaintiff avers that "as a direct and proximate cause" of the negligent manufacture and distribution of this vitamin B-12 injection, which she took at her doctor's direction, Plaintiff became "quite debilitated and ill, suffered extreme pain and mental anguish, and severe nerve damages and continues suffering on a daily basis . . . ." Compl. ¶ 5.

On August 7, 2012, Defendants American Regent, Inc., Luitpold Pharmaceuticals, Inc. (collectively "Defendants"), and Daiichi Sankyo Co., Ltd. of Japan timely removed the case to

this Court on the basis of diversity jurisdiction.[1]  On December 13, 2012, this Court granted Daiichi Sankyo Co., Ltd. of Japan's motion to dismiss Plaintiff's claims for lack of personal jurisdiction and failure to state a claim upon which relief could be granted.  The Court denied the Defendants' motion to dismiss the case for insufficient service of process.  *See Schmitt-Doss v. Am. Regent, Inc.*, No. 6:12-CV-00040, 2012 WL 6474038, at *1 (W.D. Va. Dec. 13, 2012) [*Schmitt-Doss I*].

After United States Magistrate Judge Robert S. Ballou resolved various discovery disputes, Defendants filed the two motions currently before this Court.  Defendants claim that Plaintiff failed to timely file proper expert disclosures and that she presents no disputes of material fact.  This Court should therefore dismiss Plaintiff's case for several reasons, Defendants contend.  First, Defendants argue that Plaintiff has produced no expert testimony or other admissible evidence on the element of causation linking her personal injury to either product liability or any other breach of duty by Defendants.  Second, to the extent Plaintiff asserts a failure to warn claim, the learned intermediary doctrine should preclude liability.  Finally, Defendants argue that the statute of limitations for personal injury actions under Virginia law bars Plaintiff's claims.  Both motions have been fully briefed, and I heard argument from Plaintiff and Defendants on July 17, 2014.

Since I find that Plaintiff has failed to present any dispute of material fact over whether her injuries were proximately caused by the vitamin B-12 injections, and that she failed to file her suit within the applicable statute of limitations, I will grant Defendants' Motion for Summary Judgment and deny as moot Defendant's Motion to Exclude Plaintiff's Experts.

---

[1] Plaintiff did not serve her complaint on defendants until July 11, 2012.  Only American Regent, Inc., and Luitpold Pharmaceuticals, Inc. remain in the case, so only these parties are designated as "Defendants" in this opinion.

## II. FACTUAL BACKGROUND[2]

This products liability matter arises from Plaintiff's allegation that she was given a pharmaceutical drug injection containing cyanide and aluminum. Beginning in February 2009 and continuing through July 2009, Plaintiff states that she received injections of a vitamin B-12 solution by the staff of Dr. Thomas E. Dobyns, of Madison Heights, VA.[3] According to Plaintiff's complaint, the drug was manufactured and distributed to medical professionals by the Defendants Regent and Luitpold. Plaintiff alleges that "Defendants willfully, intentionally and negligently allowed the Vitamin B-12 Injection solution to be distributed and dispensed to the Plaintiff containing foreign matter." Compl. ¶ 4. Specifically, Plaintiff alleges that the injections she received contained aluminum and "cyanocobalamin, which is a molecule of cyanide and poison." Plaintiff does not disclose how or when she discovered what ingredients those injections contained, or how her injections may have differed from other vitamin B-12 injections on the market.[4] As a result of these injections, Plaintiff states that she "bec[a]me quite debilitated and ill, suffered extreme pain and mental anguish, and severe nerve damages [sic] and continues suffering on a daily basis . . . ." Plaintiff originally requested a jury trial, and she seeks $10 million in damages.

Defendants received the summons and complaint for this action from the Secretary of the Commonwealth on July 23, 2012. None of the Defendants are incorporated or reside in Virginia,

---

[2] I repeat the factual background I have already outlined in *Schmitt-Doss v. Am. Regent, Inc.*, No. 6:12-CV-00040, 2012 WL 6474038, at *1 (W.D. Va. Dec. 13, 2012) [*Schmitt-Doss I*], along with new information from the discovery the parties have undergone since the *Schmitt-Doss I*.

[3] Dr. Dobyns is not a party to this case.

[4] In fact, there is evidence that when vitamin B-12 is prescribed in the medical field, that particular vitamin supplement is referred to as "cyanocobalamin." *See Eli Lilly and Co. v. Tevan Parental Medicines, Inc., et al.*, 2012 WL 2358102, at *11 (S.D. Ind. June 20, 2012) ("The Court accepts [plaintiff's] expert's . . . representation that a person of ordinary skill in the art would understand 'vitamin B12' to mean cyanocobalamin.").

3

and Defendants filed a notice of removal pursuant to 28 U.S.C. §§ 1441 and 1446 on August 7, 2012.[5]  The case was transferred from Amherst County Circuit Court to this Court on August 8, 2012.  On December 13, 2012, this Court allowed the suit to proceed forward with only Luitpold and Regent as defendants.

On April 1, 2014, this Court issued a pretrial order and set certain deadlines.  On April 15, 2014, the jury trial was set for September 3, 2014 – this later became a bench trial when Plaintiff withdrew her jury trial demand.  On June 3, 2014, Defendants filed a motion to compel initial disclosures, to which Plaintiff responded with a motion to continue trial on June 9, 2014.  After two continuance requests from Plaintiff due to poor health, Magistrate Judge Ballou granted in part and denied in part the motions on June 19, 2014, without oral argument.  Judge Ballou denied Plaintiff's motion to continue the trial, finding no reason to do so.  He compelled Plaintiff to provide initial disclosures within fourteen days of his order and extended other discovery and dispositive filing and hearing deadlines.  The deadline to complete discovery became July 7, 2014.  The deadline for expert disclosures remained June 16, 2014.  As noted, Defendants filed their motion for summary judgment and motion to exclude Plaintiff's experts on June 23, 2014, and it has been fully briefed and argued.

### III. LEGAL STANDARD

The court should grant summary judgment if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the evidence of a genuine issue of

---

[5]  Plaintiff lists her address as Madison Heights, VA.  Defendants American Regent, Inc. and Luitpold Pharmaceuticals, Inc. are New York corporations with their principal place of business in Shirley, NY.  Taking into account the $10 million in controversy and citizenship of the parties, I have jurisdiction over the remaining parties in this case pursuant to 28 U.S.C. § 1332.

4

material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citations omitted). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of [her] claim at trial. . . . In short, the summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); Fed. R. Civ. P. 56(c)(2) (allowing objection on summary judgment if "material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.").

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The trial court has an "affirmative obligation" to "prevent 'factually unsupported claims [or] defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 323–24).

5

## IV. Discussion

Federal courts sitting in diversity apply the substantive law of the forum state, including that state's choice of law rules. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). For tort claims brought in Virginia, the substantive law of the place of the wrong governs the proceeding. *See Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986). Plaintiff's injury occurred in Virginia, so Virginia's law on products liability and personal injury applies.[6]

To establish actionable negligence under Virginia law, Plaintiff must show "the existence of a legal duty, a breach of that duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003). Plaintiff's complaint may be construed to make several claims under Virginia law. *See generally Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009), and noting liberal construction of *pro se* complaint).

First, Plaintiff's complaint appears to make a claim of negligent manufacturing or breach of the implied warranty of merchantability. Compl. ¶¶ 3–4 (noting Defendants' "duty to exercise due care in the manufacture and distribution" of B-12 injections, and averring that "Defendants willfully, intentionally and negligently allowed the Vitamin B-12 Injection solution to be distributed and dispensed to the Plaintiff containing foreign matter," identified as cyanide and aluminum); *see, e.g.*, *Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 500–01, 504–05 (E.D. Va. 2013) (discussing complaint pleading negligent manufacturing and breach of implied warranty claims under Virginia law for alleged defects in a prescription drug). Liberally construed, Plaintiff's complaint may also claim that Defendants were negligent in distributing

---

[6] Although Virginia law applies to the substance of Plaintiff's claim for products liability and personal injury, "whether there is sufficient evidence to create a jury issue of those essential substantive elements of the action, as defined by state law, is controlled by federal rules." *Fitzgerald v. Manning*, 679 F.2d 341, 346 (4th Cir. 1982).

6

the product to her, in that they failed to properly warn her of dangers she argues are inherent in taking the vitamin B-12 injections. *See* Compl. ¶¶ 3–4.

Defendants argue that Plaintiff has not provided any admissible evidence to prove her liberally-construed claims for negligence, breach of implied warranty, or failure to warn, especially on the point of proximate causation. Defendants further advocate that all of Plaintiff's claims should be dismissed as barred by Virginia's personal injury statute of limitations, and any failure to warn claim as barred by the learned intermediary doctrine. Defendants assert that this Court should deem certain facts as admitted by Plaintiff due to her failure to timely respond to a request for admissions. Defendants also ask this Court to exclude any expert testimony Plaintiff may wish to proffer because she has failed to properly disclose proposed expert testimony under Federal Rule of Civil Procedure 26(a)(2).

### A.  Statute of Limitations under Virginia Code §§ 8.01-230 and -243

Virginia law provides that personal injury suits must be filed "within two years after the cause of action accrues," regardless of the "theory of recovery."  Va. Code § 8.01-243(A). Virginia Code § 8.01-230 clarifies that a cause of action "shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained . . . and not when the resulting damage is discovered . . . ."  Va. Code. § 8.01-230.  State and federal courts interpreting these statutes have held that "in a personal injury action . . . it does not matter when a plaintiff discovered—or reasonably could have discovered—that she was injured, or when she could have discovered that her injury was caused by the defendant's product. Rather, the only question is when the injury occurred."  *Torkie-Tork v. Wyeth*, 739 F. Supp. 2d 887, 891 (E.D. Va. 2010); *Locke v. Johns–Manville Corp.,* 275 S.E.2d 900, 904 (Va. 1981) (construing Va. Code §§ 8.01–230 and –243) ("[T]he running of the time is tied to the fact of harm to the plaintiff.").

7

The personal injury statute of limitations applies to Plaintiff's negligence, breach of implied warranty, and failure to warn claims alike. *See, e.g.*, *Flick v. Wyeth LLC*, No. 3:12-CV-00012, 2012 WL 4458181, at *2–3 (W.D. Va. June 6, 2012). The burden of proof to establish facts necessary to prevail on a statute of limitations defense rests with Defendants. *Lo v. Burke,* 455 S.E.2d 9, 12 (Va. 1995); *Brown v. Plywood Panels, Inc.*, 67 F.3d 293, at *4 (4th Cir. 1995).

Defendants contend that Plaintiff's claims are all barred by Virginia's statute of limitations because she filed her complaint in state court on July 18, 2011, more than two years after her injury was sustained on April 16, 2009.[7] *See* Defs.' Reply on Defs.' Mot. for Summ. J. 3–4; Pl.'s Resp. on Defs.' Mot. for Summ. J. 3 ("Within two months of receiving the injections the Plaintiff was suddenly, on April 16, 2009, bedridden due to numbness, tingling, inability to move arms, hands, legs, and feet and in excruciating pain."). Plaintiff counters that her injuries "were not limited to one cause of action as the Vitamin B-12 injections continued for a period of 8 months causing additional permanent injuries," and that the "discovery of the cause of the injuries" did not occur until sometime later. Pl.'s Resp. on Defs.' Mot. for Summ. J. 5.

Plaintiff also asks this Court to toll the statute of limitations, pursuant to Virginia Code § 8.01-229(A)(2)(b), because she claims she was incapacitated from April 16, 2009, through February 2010. *Id.* at 5–6. She could not "move her arms, hands, legs, and feet and [was] in significant pain for a period of a minimum of 12 months thusly rendering her incapacitated." *Id.* at 6. Once a person is deemed incapacitated under Virginia Code § 229, any time during which the person is adjudged to have been incapacitated does not count toward the time that passed between the action's accrual and the filing of suit. *See, e.g.*, *Calvert v. State Farm Fire & Cas. Co.*, No. 5:12-CV-00017, 2012 WL 2804838, at *8 (W.D. Va. July 10, 2012). If this Court

---

[7] Plaintiff's briefs also discuss vitamin B-12 injections she received in 2008 and some subsequent swelling. Pl.'s Resp. on Defs.' Mot. for Summ. J. 2. But Plaintiff's complaint only claims damages for injections she received in 2009 and subsequent injuries; therefore, April 16, 2009 is the correct date of injury for her claims. *See* Compl. ¶ 2.

excluded the twelve months in which Plaintiff claims she was incapacitated from the calculation of the statute of limitations, Plaintiff's claims would be timely filed under Virginia law. Plaintiff bears the burden to prove that incapacity should toll the statute of limitations. *See Kumar v. The Glidden Co.*, No. CIV.A. 2:05CV499, 2006 WL 1049174, at \*5 (E.D. Va. Apr. 13, 2006) (citing *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570, 574 (4th Cir. 1976)).

Several courts in this district have relied on the definition of an "[i]ncapacitated person" given in Virginia Code § 64.2-2000[8] to determine whether a plaintiff is incapacitated for the purpose of tolling the statute of limitations. *See, e.g.*, *Calvert*, 2012 WL 2804838, at \*8–9; *Kumar*, 2006 WL 1049174, at \*5; *see also In re Zyprexa Products Liab. Litig.*, No. 04-MD-1596, 2011 WL 4357319, at \*4 (E.D.N.Y. Sept. 16, 2011).

Section 64.2-2000 defines an "[i]ncapacitated person" as

> an adult who has been found by a court to be incapable of receiving and evaluating information effectively or responding to people, events, or environments to such an extent that the individual lacks the capacity to (i) *meet the essential requirements for his health, care, safety, or therapeutic needs without the assistance or protection of a guardian* or (ii) *manage property or financial affairs or provide for his support or for the support of his legal dependents without the assistance or protection of a conservator.* A finding that the individual displays poor judgment alone shall not be considered sufficient evidence that the individual is an incapacitated person within the meaning of this definition. A finding that a person is incapacitated shall be construed as a finding that the person is "mentally incompetent" as that term is used in Article II, Section 1 of the Constitution of Virginia and Title 24.2 unless the court order entered pursuant to this chapter specifically provides otherwise.

Va. Code § 64.2-2000 (emphasis added). Courts have focused heavily on whether physical or mental incapacity becomes so severe as to require a guardian or conservator, often finding that plaintiffs who were physically debilitated nonetheless had capacity for tolling purposes because they were not completely mentally incapable of making judgments or completely physically

---

[8] Courts have referred to Virginia Code § 37.2-1000 in the cases cited. Section 37.2-1000 has been recodified in identical form at § 64.2-2000. *Compare* Va. Code § 37.2-1000 (2012) *with* Va. Code § 64.2-2000 (2014).

incapable of caring for themselves. *See, e.g., Calvert*, 2012 WL 2804838, at *11; *Kumar*, 2006 WL 1049174, at *1–2, 7–9; *Sisk v. Virginia,* 56 Va. Cir. 230, 2001 WL 34038010, at *2–3 (Charlottesville Cir. Ct. June 15, 2001).

In *Kumar*, the plaintiff claimed that exposure to toxic adhesive caused her extreme pain, and that during the statute of limitations period, she suffered many physical ailments. These included "impaired memory, . . . musculoskeletal aching, . . . reproductive abnormalities, neurologic symptoms . . . difficulty thinking clearly, getting lost, forgetfulness, muscle spasms, blurred vision, poor balance, numbness, and tremor," combined with "headaches, weakness, fatigue, impaired coordination," and even treatment for bipolar/manic depression at Eastern State Hospital. *Kumar*, 2006 WL 1049174, at *1–2 (internal quotation marks and citations omitted). Despite those limitations, the court found the plaintiff was not incapacitated as necessary to toll the statute of limitations because periods of hospitalization and an alcoholism problem "did not prevent her from applying for disability . . . entering into a marriage, having a child, buying a home under her name, and undertaking numerous other important obligations. If she could undertake these activities, she certainly could have called a lawyer." *Id.* at *8. Although the plaintiff's mother in *Kumar* managed her finances, was the payee for plaintiff's social security checks, and helped with some physical limitations and driving, the plaintiff was not "completely dependent on her mother for other care" and was able "to manage her own affairs and those of her children without the benefit for a guardian or conservator." *Id.* Therefore, Judge Doumar held that she was not incapacitated within the meaning of Virginia Code § 229, and he declined to toll the statute of limitations on her personal injury claims. *Id.* at 8–9.

A court in this district made a similar finding in *Calvert* when a plaintiff claimed incapacity from "extreme emotional distress" that "caused [her] to become severely and

clinically depressed, amplified her anxiety, and began to manifest itself in other physical illnesses including infection and removal of her appendix, infection and removal of her gallbladder, sphincter of oddi, multiple surgeries and hospitalizations, regular and ongoing medical treatments, regular and ongoing psychological treatments and prescription drug therapies, loss of employment, [and] loss of the ability to drive a car . . . ." *Calvert*, 2012 WL 2804838, at *10. Nothing in the record suggested severe mental or physical incapacity such that the plaintiff could not meet her needs or make decisions without the help of a guardian or conservator; therefore, the court found the plaintiff was not incapacitated under Virginia Code § 229 and declined to toll the statute of limitations on her personal injury claims. *Id.* at *10–11.

Plaintiff's injury was sustained on April 16, 2009, by her admission. *See* Pl.'s Resp. to Defs.' Mot. for Summ. J. 3.[9] Therefore, Plaintiff's personal injury claims on the theories of breach of implied warranty, negligent manufacturing, and failure to warn are barred by Virginia Code §§ 8.01-243 and -230, unless the statute of limitations is tolled for incapacity.

Plaintiff claims she was "bedridden due to numbness, tingling, inability to move arms, hands, legs, and feet and in excruciating pain" on April 16, 2009, became "quite debilitated and

---

[9] Plaintiff's argument about continuing injury is meritless under Virginia law. Courts have soemtimes allowed claims to proceed for events and injuries occurring in a continuing series when each event causes distinct, separable injury, and a separate event and accompanying injury occurred within the limitations period. In that case, the plaintiff can sue for the event and injury that occurred within the applicable statute of limitations. *See, e.g.*, *Williams v. E.I. DuPont de Nemours & Co.*, 11 F.3d 464, 467 (4th Cir. 1993) (finding construction worker's injuries from exposure to noise and dust largely barred by Virginia statute of limitations, except for one exposure within the statute of limitations that resulted in an immediate visit to the hospital); *Adams v. Alliant Techsystems, Inc.*, 201 F. Supp. 2d 700, 711–12 (W.D. Va. 2002) (holding that Virginia statute of limitations would not bar plaintiffs' claims for any injuries specifically resulting from acts occurring less than two years before date of suit, when series of wrongful acts exposed plaintiffs to excessive noise and distinct injuries upon each exposure). Plaintiff could potentially benefit from this case law if she underwent an injection after July 18, 2009 and suffered distinct and attributable injury from it. Plaintiff's complaint and arguments at the hearing suggest she received her last injection in July 2009, but the exact date is unclear. Even if that last injection occurred after July 18, 2009, Plaintiff has presented no evidence that she suffered any distinct injury from that injection. Indeed, my conclusion that Plaintiff cannot proximately link her injuries to the B-12 injections means that any injection she received after July 18, 2009, cannot be linked specifically to any injury she suffered. Therefore, Plaintiff's injuries occurred outside the statute of limitations, and it bars her claims.

11

ill," suffered "extreme pain and mental anguish, and severe nerve damages [with] continued suffering on a daily basis," including pain preventing her from "working, driving an automobile and participating in recreational activities for a period of more than two years." Pl.'s Resp. to Defs.' Mot. for Summ. J. 3; Compl. ¶ 5. During her deposition, Plaintiff described her pain as burning, stinging, stabbing, and throbbing pain that emanates from her extremities. This pain, according to Plaintiff, has been constantly present and totally debilitating, to the point that she could not get out of bed until January of 2010 except for doctor's visits in a walker or wheelchair. Schmitt-Doss Depo., Mot. for Summ. J. Ex. A at 20–22; 54–60 [hereinafter, "Schmitt-Doss Depo."].

Plaintiff claims she was totally bedridden from April 2009 to January 2010, but notes that with driving help and aid ascending steps, she met an acquaintance in her office sometime before August 2009 about listing houses for sale. Pl.'s Resp. to Defs.' Mot. for Summ. J. 4 ("By August, 2009, Plaintiff put an end to the B-12 injections as a result of a conversation with an acquaintance who related the same sudden paralyzing medical condition which afflicted his mother and caused by Vitamin B-12 injections."); Schmitt-Doss Depo. at 31–35 (discussing same conversation with acquaintance, who came to office to see her about listing houses for sale). Additionally, although driven by others, Plaintiff used a walker or wheelchair to attend numerous doctors' appointments during that time period; later, she used a cane. Schmitt-Doss Depo. 60. In 2009, Plaintiff's after-expense commissions from selling real estate amounted to $4,720 (down from $39,210 in 2008 and $72,679 in 2007). Schmitt-Doss Depo. 73–74.

The current record makes clear that Plaintiff worked, made financial decisions, attended doctor's visits, made medical care decisions, and cared for herself with the help of her family, friends, and neighbors – even during the most severe period of her injury in 2009. She only

12

visited the hospital once, for a dehydration issue.  Schmitt-Doss Depo. 60–61.  These ailments do not qualify her as an "incapacitated person" during any of this time period under the case law and Virginia Code § 229.  Plaintiff was clearly capable of "receiving and evaluating information effectively," "responding to people, events, or environments," and did not need a guardian or conservator to manage her affairs, although she required some help.  Va. Code § 229.   Hence, she has failed to meet her burden that the statute of limitations in Virginia Code § 243 should be tolled, and her claims are barred as filed beyond the two-year limitations period.

## B.  Proximate Cause, Expert Testimony, and Discovery Disputes

Even if the statute of limitations did not bar Plaintiff's claims, I would dismiss them because Plaintiff's claims lack support from admissible, material evidence, including evidence of causation.  "[I]n a products liability action, proof of causation must ordinarily be supported by expert testimony because of the complexity of the causation facts."  *McCauley v. Purdue Pharma L.P.*, 331 F. Supp. 2d 449, 464 (W.D. Va. 2004).  Defendants first argue Plaintiff has forfeited her right to present expert testimony in this case by failing to properly disclose that testimony under Federal Rule of Civil Procedure 26.   Plaintiff's experts also have not proximately linked her injuries with Defendants' vitamin B-12 injections.  In fact, Defendants observe that Plaintiff's experts have so far explicitly found her injuries stemmed from many sources, or said that they lack the expertise to pinpoint a single cause of those injuries.

### 1.  Proximate Cause

Expert testimony is generally necessary to prove proximate causation in a products liability case.  *McCauley*, 331 F. Supp. 2d at 464.   In considering Defendants' motion for summary judgment, I have examined the whole record and drawn all reasonable inferences in the light most favorable to Plaintiff.  *See Reeves*, 530 U.S. at 150.  Even so, Plaintiff has failed to

13

produce any expert opinion to show her injuries were proximately caused by the vitamin B-12 injections she received. This defect is fatal to her case on summary judgment. *See, e.g.*, *McCauley*, 331 F. Supp. 2d at 464.

### (a) *Plaintiff's negligent manufacture and breach of implied warranty claims*

In Virginia, to recover under theories of negligent manufacturing or breach of implied warranty, a plaintiff must show:

> (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the manufacturer's hands. A product is unreasonably dangerous if it is *defective in assembly or manufacture*, unreasonably dangerous in design, *or unaccompanied by adequate warnings concerning its hazardous properties*.

*Morgen Indus., Inc. v. Vaughan*, 471 S.E.2d 489, 492 (Va. 1996) (internal citations omitted) (emphasis added); *Ball v. Takeda Pharm. Am., Inc.*, 963 F. Supp. 2d 497, 504–05 (E.D. Va. 2013); *Austin v. Clark Equip. Co.*, 821 F. Supp. 1130, 1133 (W.D. Va. 1993) *aff'd*, 48 F.3d 833 (4th Cir. 1995).

At this point, Plaintiff has only provided inferences and a temporal link between her injuries and the vitamin B-12 injections. A temporal link is insufficient on its own to support proximate causation. *See Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 974 (4th Cir. 1990) (finding temporal link between vaccination and injuries, without more, insufficient to establish causation on summary judgment); *McCauley*, 331 F. Supp. 2d at 464–65 (dismissing complaint on motion for summary judgment due to lack of expert testimony linking OxyContin use to injuries, distinct from other possible causes); *Ball*, 963 F. Supp. 2d at 504–06 (dismissing products liability claim against prescription drug manufacturer for lack of supporting evidence). Plaintiff has attempted to submit expert testimony linking her injuries and the vitamin B-12 injections. This Court has little information about the substance of Plaintiff's proposed expert

testimony, because she has not provided required summaries of treating physicians' testimony or expert reports for specially-retained experts. *See* Fed. R. Civ. P. 26(a)(2).

The limited information currently before this Court gives rise to no facts or inferences that support the existence of proximate cause. Dr. Dobyns stated during his deposition that he did not have the medical expertise or knowledge base to opine about whether the vitamin B-12 injections caused Plaintiff's injuries. *See* Dobyns Depo., Mot. for Summ. J., Ex. B at 12–18 [hereinafter "Dobyns Depo."] (discussing the temporal link between the vitamin B-12 injections and Plaintiff's injuries but noting that his "expertise level" as a family practitioner did not give him the "knowledge base" to opine "to a degree of scientific certainty or professional certainty as to . . . whether the B12 caused the problems [Plaintiff] alleges."). For that reason, Dr. Dobyns sent Plaintiff to various specialists to obtain their opinions on her injuries. Dobyns Depo. 18, 75.

Those neurologists and specialists opined after examining Plaintiff that her symptoms were either idiopathic or multifactorial, stemming from some combination of her vitamin B-12 deficiency, polyneuropathy, hypothyroidism, alcohol consumption, cervical spinal stenosis, peripheral neuropathy, and folate deficiency. *See* Dobyns Depo. 6–10, 64–72; Dr. Larriviere Letter, Mot. for Summ. J., Ex. B at 95–97; Dr. Joseph Letter, Mot. for Summ. J., Ex. B at 93–94. During the hearing and in her deposition, Plaintiff admitted that none of the specialists or doctors she saw opined that her injuries were due to the vitamin B-12 objections. Schmitt-Doss Depo., 14–15, 21–23. Dr. Dobyns has confirmed that none of the specialists who saw Plaintiff conveyed this opinion to him. Dobyns Depo. 13–15, 72. Furthermore, Dr. Dobyns stated that he agreed with the specialists' opinion that Plaintiff's injuries were "multifactorial," or potentially stemming from multiple medical conditions. Dobyns Depo. 71, 77 ("Q Okay. What caused the neuropathy, what we've talked about? A That's the six million dollar question. Q Right.

15

Multifactorial is basically what Dr. L said. A Tend to agree with the specialist, usually. Q And in this case do you? A I do. I don't have any proof to the other.").

Plaintiff has failed to show that any material fact presents a genuine issue for trial. For all of her claims, Plaintiff would need to show that the vitamin B-12 injection was unreasonably dangerous, meaning defective in manufacture or unaccompanied by adequate warnings concerning hazardous properties of the injections. *See Morgen Indus.*, 471 S.E.2d at 492; *Ball*, 963 F. Supp. 2d at 504–05; *Funkhouser v. Ford Motor Co.*, 736 S.E.2d 309, 313–14 (Va. 2013) (finding knowledge that chattel is or is likely to be dangerous for use for which supplied necessary for failure to warn claim). Plaintiff has presented no expert testimony on that point,[10] and has failed to proximately link any dangerous properties or failure to warn to her injuries, because no expert has opined that Plaintiff's injuries were caused in any way by the vitamin B-12 injections. *See, e.g.*, *Ball*, 963 F. Supp. 2d at 505–06 ("The plaintiff never contends that [defendant] could have designed [the prescription drug] differently before putting it into the stream of commerce, or that such a design is even feasible. She does not articulate how [the drug] may have been manufactured improperly.").

Plaintiff presents no facts to support even an inference that the specific injections she received, or all vitamin B-12 injections sold by Regent and Luitpold, have been defectively manufactured, or even if they were, that the flaws proximately caused Plaintiff's injuries. I will therefore grant Defendant's motion for summary judgment and dismiss Plaintiff's claims for negligent manufacture and breach of implied warranty. *See, e.g.*, *Rohrbough v. Wyeth Labs.*,

---

[10] Plaintiff's two timely disclosures of hair, tissue, and mineral analyses confirming the presence of aluminum in her system do not provide this link. Furthermore, this Court has insufficient information to determine whether those analyses would be admissible under Rule 702 and *Daubert* because Plaintiff's disclosure lacks any indication of what facts and qualifications underlie the analyses. Plaintiff has not submitted these analyses to the Court, except for one incomplete page of one of the mineral analyses. Plaintiff's untimely disclosure of the expert testimony of Nurse Duff suffers from the same problems, as discussed further *infra*.

*Inc.*, 916 F.2d 970, 974–76 (4th Cir. 1990) (affirming grant of summary judgment because no clear expert testimony linked a plaintiff's injuries to a vaccine); *Ball*, 963 F. Supp. 2d at 504–06 (dismissing a plaintiff's negligent manufacturing, breach of warranty, and failure to warn claims on motion to dismiss because complaint did not support bare allegations of defects with facts).

### (b) Plaintiff's failure to warn claim

In making a failure to warn claim, a plaintiff can show a product was "unreasonably dangerous" by showing it was "unaccompanied by adequate warnings concerning its hazardous properties." *See Morgen Indus.*, 471 S.E.2d at 492. In other words, a failure to warn claim requires a showing that the manufacturer:

> (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
> (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
> (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

*Funkhouser v. Ford Motor Co.*, 736 S.E.2d 309, 313–14 (Va. 2013).

The proximate cause inquiry diverges somewhat regarding Plaintiff's failure to warn claim, due to the learned intermediary doctrine.[11] The learned intermediary doctrine indicates:

> [I]n circumstances where (1) ethical drugs or medical devices that can be prescribed or installed only by a physician are involved and (2) a physician prescribes the drug or installs the medical device after having evaluated the patient, the manufacturer of the drug or device owes only the duty to warn the physician and to provide the physician with adequate product instructions.

---

[11] Although the Supreme Court of Virginia has never explicitly adopted the learned intermediary doctrine, it has appeared to apply the doctrine, and both the Fourth Circuit and Virginia trial courts have applied the doctrine in products liability cases. *See, e.g.*, *Pfizer, Inc. v. Jones*, 272 S.E.2d 43, 44 (Va. 1980) ("We start with elementary principles of law. . . . '[I]n the case of prescription drugs, it is the general rule that the duty of the drug manufacturer is to warn the physician who prescribes the drug in question . . . .'") (citing 2 R. Hursh & H. Bailey, American Law of Products Liability § 8:11, 173 (2d ed. 1974)); *Hamlett v. Virginia Vascular Assocs.*, 61 Va. Cir. 468 (2003) (noting that the Supreme Court of Virginia "applied the [learned intermediary] doctrine to a manufacturer of prescription drugs.") (citing *Pfizer*, 272 S.E.2d at 44.); *Hart v. Savage*, No. L-04-1663, 2006 WL 3021110, at *2 (Va. Cir. Ct. Oct. 19, 2006) (similar). Since the Fourth Circuit has assumed that the Supreme Court of Virginia would adopt the learned intermediary doctrine and has applied the doctrine to affirm dismissal of medical products liability cases, I find it appropriate to apply the doctrine in this case. *See, e.g.*, *Talley v. Danek Med., Inc.*, 179 F.3d 154, 163–64 (4th Cir. 1999); *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 644 (4th Cir. 1981).

Case 6:12-cv-00040-NKM-RSB   Document 56   Filed 08/05/14   Page 17 of 27   Pageid#: 913

*Talley v. Danek Med., Inc.*, 179 F.3d 154, 163 (4th Cir. 1999); *Pfizer, Inc. v. Jones*, 272 S.E.2d 43, 44 (Va. 1980) ("We start with elementary principles of law. . . . '[I]n the case of prescription drugs, it is the general rule that the duty of the drug manufacturer is to warn the physician who prescribes the drug in question . . . .'").

A claim presents insufficient evidence that an alleged failure to warn caused a plaintiff's injury when the evidence shows that a doctor's actions in warning and prescribing prescription drugs would not have been affected by an adequate warning. *See, e.g.*, *Stanback v. Parke, Davis & Co.*, 657 F.2d 642, 644–46 (4th Cir. 1981) (affirming dismissal of complaint on summary judgment under Virginia law when doctor testified to knowing about risks presented by vaccines and that he did not warn patients about those risks before vaccinating them); *cf. Odom v. G.D. Searle & Co.*, 979 F.2d 1001, 1002–04 (4th Cir. 1992) (similar holding, under South Carolina law). Stated another way: "If a reasonable, prudent physician would have still administered [the B-12 injections] to the plaintiff, regardless of the warning, then [the manufacturer's] alleged breach of duty in failing to warn cannot be the cause in fact of the plaintiff's injury. In simple, generalized terms, the causation formulation requires that defendant's negligent act to have played some part in affecting the plaintiff's injury." *Stanback v. Parke, Davis & Co.*, 502 F. Supp. 772, 774–75 (W.D. Va. 1980) *aff'd*, 657 F.2d 642 (4th Cir. 1981); *see also Talley v. Danek Med., Inc.*, 7 F. Supp. 2d 725, 730 (E.D.Va. 1998), *aff'd*, 179 F.3d 154 (4th Cir.1999) ("[A] plaintiff must not only show that a manufacturer's warning was inadequate, but that such inadequacy affected the prescribing physician's use of the product and thereby injured the plaintiff.").

Of primary concern, Plaintiff has presented no admissible evidence to raise a dispute of material fact or inference that Dr. Dobyns did not receive the FDA-approved warnings that

18

normally accompany vitamin B-12 injections. To defeat summary judgment, Plaintiff has the burden to produce admissible evidence that reveals a genuine dispute of material fact. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); Fed. R. Civ. P. 56(c)(2). Plaintiff testified during her deposition that a nurse at Dr. Dobyns' office told her in August 2009 that the office usually received vitamin B-12 injections in a box of multi-dose vials, and that no package inserts or warnings were included with the vials. Schmitt-Doss Depo 49–51. In present form, the nurse's statements are inadmissible hearsay, and Plaintiff has provided no affidavit, declaration, deposition testimony, or other sworn statement about whether Dr. Dobyns received warnings with the vitamin B-12 injections. When asked about whether he received warnings for the vitamin B-12 injections during his deposition, Dr. Dobyns did not give a direct answer. Dobyns Depo. 24–25 (Q "So this [warning] would have accompanied the product as administered to Ms. Schmitt-Doss, this or the version in 2009 or 2009; is that correct? A You're telling me it would. Q But something like this you're used to seeing? A That is correct.").

Plaintiff has not produced admissible evidence that creates a genuine dispute over whether Dr. Dobyns received adequate warnings concerning the vitamin B-12 injections. Plaintiff does not claim that the FDA-approved warnings normally sent out with the injections would be inadequate. In fact, she says she would not have consented to take the injections if she had been told what the FDA-approved warnings report about the injections' potential side effects. Plaintiff has basically admitted to the adequacy of the warnings normally provided, only claiming that they were not provided to Dr. Dobyns before he gave her the injections. Unfortunately for Plaintiff, simply claiming that the warnings were not provided is insufficient to meet her burden on summary judgment.

19

Defendants have presented undisputed, prima facie evidence that their normal practice was to ship each package containing vitamin B-12 injections with FDA-approved warnings during the time period in question. Mot. for Summ. J. Ex. C. In sworn testimony, Paul Diolosa, the Vice President of Manufacturing for Luitpold, certifies that vitamin B-12 injections shipped by Luitpold and distributed by Regent contain "[p]ackage inserts [that] are added by hand to shelf packs." *Id.* at ¶¶ 1, 5. Subsequently, Defendants inspect a representative sample size of each lot shipped to determine whether package inserts have been included with shelf packs of the vitamin-B-12 injections. *Id.* at ¶ 5. Based on these procedures, in place at least since 2005 for the vitamin B-12 injections at issue in this case, Diolosa states his "understanding and belief that the shelf pack of our Cyanocobalamin Injection, USP, products that would have been shipped in the last decade would have included a package insert." *Id.* at ¶ 6. Plaintiff has presented no admissible evidence to create a genuine dispute about whether Dr. Dobyns received adequate warnings, other than to make the conclusory claim that he did not. Therefore, I will dismiss her failure to warn claim. *See generally Ball*, 963 F. Supp. 2d at 504–06.

Even if I were to assume that Dr. Dobyns did not receive adequate warnings about the injections from Defendants, his deposition testimony establishes that an adequate warning would not have altered his actions – either in failing to warn Plaintiff about the potential negative side effects of the injections, or in administering the injections to Plaintiff.

Dr. Dobyns had a great deal of firsthand knowledge about these injections, as he has been prescribing and administering them to many of his patients for thirty years. Dobyns Depo. 16, 22–23. Dr. Dobyns never explicitly admitted that he understood the risks associated with the injections when he administered them to Plaintiff. But he discussed potential risks and his rationale for administering the injections without warning patients beforehand. Dobyns Depo.

17–31, 34–36. He indicated an awareness that the vitamin B-12 injections could result in anaphylactic shock, as noted on the FDA-approved warning. Dobyns Depo. 25–27 ("Q Had you heard about this warning that you could die from these injections? A Almost everything out there that you inject into somebody is going to have an anaphylactic warning for it. There is going to be rare individuals that are going to be hypersensitive to some sort of component."). Dr. Dobyns also stated that the injections "[o]bviously" contain cyanide, but stated he had no experience with adverse reactions for that reason, and no evidence that Plaintiff reacted adversely due to the presence of aluminum or cyanide in the injections. Dobyns Depo. 35–36.

Dr. Dobyns stated that he did not go through the warnings provided with the injections with Plaintiff because if he attempted to warn all his patients in that manner, he would "never get through the day." Dobyns Depo. 26. Instead, he relied on knowledge that a person might be sensitive to some side effect of a particular drug, and did not otherwise give warnings for the vitamin B-12 injections to a patient before administering the injections. Dobyns Depo. 26–29. Dr. Dobyns has never seen an anaphylactic reaction from the vitamin B-12 injections, or congestive heart failure, or gastrointestinal issues, or swelling throughout the body, or adverse reactions based on aluminum or cyanide in the injections. Dobyns Depo. 23, 25–29, 33–35. He stated: "Since I've never seen any real problems from the administration of the B12 product, I did not give [Plaintiff] any [warnings], right." Dobyns Depo. 34.

At some length, Dr. Dobyns also testified about the lack of alternative ways to ensure a sufficient supply of vitamin B-12 for most patients, apart from the injections. Dobyns Depo. 10–11, 17, 22–23. Dr. Dobyns did not think that prescribing an oral vitamin B-12 supplement would prove effective for Plaintiff, so he prescribed the injection. Dobyns Depo. 10–11 ("The B12, unfortunately because it requires a cofactor to be absorbed from the gut, which is made by the

stomach, which is probably the reason why people are deficient in the first place, they don't make enough intrinsic factor, you can't swallow B12 and have it work. So you have to use it by injection. Some people use a nasal spray gel [which most people won't take because they don't like the way it feels]. I used injection."). In his opinion, Plaintiff was "deficient enough that [he] believed injections were necessary" to ensure Plaintiff received a vitamin B-12 supply that her body could access. Dobyns Depo. 32–33.

It is clear that Dr. Dobyns had a good awareness of the side effects of the vitamin B-12 injections specifically, and of injections in general. He had been prescribing these injections for thirty years, and he was used to seeing warnings like those Defendants say they provided with the injections. Nevertheless, Dr. Dobyns had not witnessed his patients experiencing any negative side effects from the injections. This led him to avoid warning patients about the injections, and he did not warn Plaintiff in this case. At the same time, Dr. Dobyns felt that it was medically necessary to administer the vitamin B-12 injections to Plaintiff so that she could properly absorb the vitamin. Altogether, Dr. Dobyns' testimony indicates that an adequate warning for the vitamin B-12 injections would not have changed the fact that he prescribed Plaintiff the injections and did not warn her of their potential side effects.

Put simply, there is no evidence before this Court that Dr. Dobyns, or any other reasonable, prudent physician would have responded differently in warning or treating Plaintiff if given adequate warnings about the risks associated with the vitamin B-12 injections. *See Stanback v. Parke, Davis & Co.*, 502 F. Supp. 772, 775 (W.D. Va. 1980) (discussing how a plaintiff claiming failure to warn must show "that each defendant's failure to warn was, in fact, a substantial factor in producing the damage complained of," or that "if adequate warnings had been given," a plaintiff's treating physician would have "responded differently in treating the

plaintiff.") *aff'd*, 657 F.2d 642 (4th Cir. 1981). Therefore, no genuine issue of material fact prevents dismissing Plaintiff's failure to warn claim, and I will grant Defendants' Motion for Summary Judgment.

### 2. Expert Testimony and Disclosure

As noted above, a products liability plaintiff in Virginia must ordinarily present expert testimony to prove causation. Defendants have moved for this Court to exclude Plaintiff's experts, arguing they were not properly disclosed.

"[A] party must disclose to the other parties the identity of any witness it may use at trial to present" expert testimony. Fed. R. Civ.P. 26(a)(2)(A). "Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report . . . if the witness is one retained or specially employed to provide expert testimony . . . ." Fed. R. Civ. P. 26(a)(2)(B). However, in cases where a full report is not required, the disclosure need only state "(i) the subject matter on which the witness is expected to present evidence ...; and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). As they are not typically "retained or specially employed to provide expert testimony," treating physicians are not ordinarily required to file Rule 26(a)(2)(B) expert reports. *See Perkins v. United States,* 626 F. Supp. 2d 587, 590 (E.D. Va. 2009). A party seeking to introduce treating physician testimony should generally comply with Rule 26(a)(2)(C).

The pretrial order in this case set the deadline for expert witness disclosures on June 16, 2014. On that date, sometime after 5:00 p.m., Plaintiff faxed an "Expert Witness List" to Defendants. *See* Mot. to Exclude 2 & Ex. 1. The list is two pages long and names several pharmacists, a naturopath, the "Blue Ridge Poison Center" (doctor unspecified), three chiropractor/acupuncturists, and Dr. Thomas E. Dobyns, Plaintiff's treating physician. Mot. to

23

Exclude, Ex. 1 at 5–6. Descriptions of these individuals include their names, the addresses of their practices, their credentials, and the "Substance of their Testimony," consisting of short descriptions of no more than fifteen words per person. Mot. to Exclude, Ex. 1 at 6. Despite Defendants' Motion to Exclude, filed on June 23, 2014, Plaintiff did not submit any expert reports, more detailed summaries, or other information until July 8, 2014.[12]

Defendants therefore move this Court to exclude Plaintiff's experts from testifying under Rules 26 and 37(c)(1). *See* Fed. R. Civ. P. 26, 37(c)(1). I will deny Defendants' Motion to Exclude as moot, since even if Plaintiff could use the experts she has disclosed, I find that Plaintiff could not proximately tie her injuries to the vitamin B-12 injections she received. However, I find that if this case proceeded forward I would exclude Plaintiff's experts, with the exception of Dr. Dobyns. Out of an abundance of caution, and in consideration of Plaintiff's *pro se* status, I will outline my reasoning below.

Plaintiff's Expert Witness List plainly does not satisfy Rule 26(a)(2)(B), requiring the disclosure of a written report for each specially-retained expert witness.[13] *See* Fed. R. Civ. P.

---

[12] On that date, Plaintiff submitted a two-page document entitled "Expert Testimony," which summarily lists two "cause[s]" of Plaintiff's injuries—vitamin B-12 overdose and lack of an FDA drug insert—and two "defect[s]"— administration of too large a dose of vitamin B-12 from a multi-dose vial and the lack of an FDA drug insert to warn about vitamin B-12's dangers. *See* Reply on Mot. to Exclude, Ex. B. From her signature at the end of the document and the context, I can infer that a nurse named Victoria Duff probably reviewed some of Plaintiff's medical records and signed on to the "Cause" and "Defect" statements. *Id.* Victoria Duff was not listed on Plaintiff's original expert witness list and provides no basis for her conclusions. This document was submitted after the extended discovery deadline of July 7, 2014 and the expert disclosure deadline of June 16, 2014, bears no indicia that the expert testimony would satisfy *Daubert* or Rule 702, and discusses a new theory that Plaintiff suffered from an "overdose" of vitamin B-12 from a multi-dose vial lacking proper FDA package inserts. I will exclude this document and any attempt to offer Victoria Duff's testimony into evidence. *See* Fed. R. Civ. P. 26(a)(2)(D).

[13] Plaintiff has not specified whether any of the witnesses on her list will testify as treating physicians, except she has stated that Dr. Dobyns provided treatment for her injuries as her primary care physician. Plaintiff's descriptions of Dr. Dobyns and the chiropractors on her list come closer to satisfying Rule 26(a)(2)(C), which requires a "summary of the facts and opinions to which the witness is expected to testify" for any experts who are not required to file a report. Fed. R. Civ. P. 26(a)(2)(C). Plaintiff summarizes the "[s]ubstance of Dr. Dobyns and the chiropractors' testimony as "Plaintiff's physical condition assessment during acute & chronic phase of illness." Mot. to Exclude, Ex. 1 at 5–6. Although this short statement does not specify the opinions to which any chiropractor or Dr. Dobyns are expected to testify, it might satisfy Rule 26(a)(2)(C) if I gave Plaintiff some leeway as a *pro se* litigant. *But see Kristensen ex rel. Kristensen v. Spotnitz*, No. 3:09-CV-00084, 2011 WL 5320686, at *2

26(a)(2)(B). The list contains no more than a thirteen-word description for each expert and makes no attempt to comply with Rule 26's directives that Plaintiff's disclosures "*must* be accompanied by a written report," which "*must* contain:"

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added). Defendants alerted Plaintiff to these flaws in the June 23, 2014 Motion to Exclude, but Plaintiff has not attempted to remedy her expert disclosures. Instead, after all final discovery deadlines had passed, Plaintiff submitted a non-compliant and vague report from an expert she had not previously listed on any disclosures.

Rule 37(c)(1) requires the exclusion of evidence or witnesses not properly disclosed under Rule 26, unless that failure was "substantially justified or . . . harmless." Fed. R. Civ. P. 37(c)(1). In determining whether such failure was substantially justified or harmless, the Fourth Circuit has instructed courts to consider:

---

(W.D. Va. June 3, 2011) (finding that "whatever the precise meaning of the requirement, a 'summary' is ordinarily understood to be an 'abstract, abridgment, or compendium . . . .' It follows that Plaintiffs cannot comply with the rule by disclosing the complete records of the treating physicians in issue.") (citing Merriam Webster's Collegiate Dictionary 1179 (10th Ed.1993)). I have information about Dr. Dobyns' treatment of Plaintiff from his deposition, and would allow his testimony at trial. I have insufficient information to find that the chiropractors were not specially retained experts, so I would not allow their testimony.

This question proves moot, because allowing Dr. Dobyns or any treating chiropractor to testify for Plaintiff would not provide the proximate cause Plaintiff needs to proceed past summary judgment. Dr. Dobyns has explicitly stated that he lacks the information and medical expertise to opine about whether Plaintiff's injuries were caused by the B-12 injections. Dobyns Depo., Mot. for Summ. J., Ex. B at 17–18 ("Q[:] You don't have the expertise to give an opinion to a degree of scientific certainty or professional certainty as to what caused – whether the B-12 caused the problems [Plaintiff] alleges? A[:] . . . I'm afraid I have to say, no, I do not have that knowledge base."). Plaintiff admitted during the motion hearing that no medical expert has opined that the vitamin B-12 injections caused her injuries. Neither has Dr. Dobyns received that kind of medical opinion from any of the specialists to whom he referred Plaintiff. *Id.* at 72.

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).

Plaintiff's failures to disclose are neither substantially justified nor harmless under the *Southern States* analysis. With a bench trial looming on September 3, 2014, allowing Plaintiff to use her experts at trial would create incurable surprise for the Defendants and leave insufficient time for the parties to obtain competing expert opinions and reports, depose witnesses, and prepare for trial. Attempting to cure the surprise by allowing Plaintiff to supplement her disclosures or obtain new expert witnesses would not solve these problems, and allowing testimony from previously disclosed or undisclosed experts would disrupt or derail trial preparation. The importance of this evidence weighs against both parties. Defendants need adequate time to prepare a defense against any experts Plaintiff retains; yet, Plaintiff's entire case hinges on expert testimony that could be excluded for her failure to comply.

Plaintiff has had over three years since this case was first filed in state court to obtain experts and make these disclosures, and her discovery deadlines have been extended multiple times. Plaintiff has provided no explanation for her failure to properly disclose the substance of her experts' testimony, other than averring that she has had difficulty obtaining an appointment at the Blue Ridge Poison Center, where she hoped to get an expert opinion from a toxicologist. As I have said before, although "a court must provide leeway to a *pro se* plaintiff, this leeway must be tempered to require the Plaintiff to comply with" the pleading rules and other requirements of the Federal Rules of Civil Procedure. *See Warren v. Tri Tech Labs., Inc.*, No. 6:12-CV-00046, 2014 WL 268495, at *2 n.3 (W.D. Va. Jan. 23, 2014) (internal quotation marks omitted). While I am sympathetic to how difficult it must be for a *pro se* plaintiff to navigate the

26

complex requirements of discovery, Plaintiff has been informed often about her obligations and has failed to remedy disclosure defects. If I did not dismiss Plaintiff's case on other grounds, I would exclude Plaintiff's retained experts because I cannot allow her to impose harmful surprise on the other party or disrupt the trial schedule without substantial justification.

### 3. Plaintiff's Response to Defendants' Request for Admissions

According to Defendants, Plaintiff failed to timely respond to a request for admissions. Defendants argue that Plaintiff should therefore be deemed to have admitted that: (1) Defendants provided all product warnings to Dr. Dobyns, and (2) that no expert has been retained to offer an opinion that Plaintiff's injuries were caused by an act or omission of Defendants, or by the vitamin B-12 injections or any of their contents. Mot. for Summ. J. 19. Plaintiff claims that she timely responded to Defendants' request for admissions. I need not decide whether Plaintiff timely responded, or whether any failure to respond would result in deemed admissions, because I will dismiss Plaintiff's case for failure to present a dispute of material fact.

### V. CONCLUSION

After thoroughly reviewing all the evidence in the summary judgment record and giving Plaintiff the benefit of any reasonable inferences, I find that Plaintiff has failed to present a dispute of material fact about whether the vitamin B-12 injections proximately caused her injuries. Plaintiff also failed to file her suit within the two-year period established by Virginia law, and was not legally incapacitated as needed to toll the statute of limitations. Therefore, I will grant Defendant's Motion for Summary Judgment, deny Defendant's Motion to Exclude as moot, and dismiss Plaintiff's case. An appropriate order follows.

Entered this   5th   day of August, 2014.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

27